**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| DARZEL ROBINSON | : | |
| | : | |
| Individually and on behalf of | : | |
|   a class of borrowers | : | Civil No. WMN-03-3106 |
|   similarly situated | : | |
| | : | |
| v. | : | |
| | : | |
| FOUNTAINHEAD TITLE GROUP | : | |
| CORP., <u>et al.</u> | : | |

**MEMORANDUM**

Before the Court is a Motion to Dismiss the Third Amended Complaint filed by Defendants Assurance Title, LLC (Assurance), Long & Foster Real Estate, Inc. (Long & Foster), and Mid-States Title Insurance Agency, Inc. (Mid-States). Paper No. 37. Defendant Fountainhead Title Group Corp. (Fountainhead) has also moved to dismiss the third amended complaint. Paper No. 36. Plaintiff Darzel Robinson has opposed the motions. Upon a review of the pleadings and applicable case law, the Court determines that no hearing is necessary (Local Rule 105.6) and that the motion of Assurance, Long & Foster, and Mid-States (New Defendants) and the motion of Fountainhead will be granted in part and denied in part.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

This action was initially filed on October 29, 2003, by the plaintiff Cheryl A. Johnson against four named defendants

including Defendant Fountainhead.[1]  Johnson complained that
Fountainhead allegedly established sham affiliated business
arrangements and that different charges of fees made by
defendants violated sections 8(a) and 8(b) of the Real Estate
Settlement Procedures Act (RESPA), 12 U.S.C. §§ 6701, et al., and
various state law provisions.  The case was filed as both a
plaintiff and defendant class action.  On December 30, 2003, this
Court entered a stay in Johnson (now Robinson) and folded the
litigation into settlement discussions before Magistrate Judge
Grimm pertaining to three related cases - Gray v. Fountainhead
Title Group Corp., Civil Action No. 1:03-cv-01675-WMN (filed June
6, 2003), Phipps v. Fountainhead Title Group Corp., Civil Action
No. 1:03-cv-02646-WMN (filed Sept. 15, 2003), and McManus now
(Keneipp) v. Fountainhead Title Group Corp., Civil Action No.
1:03-cv-02813-WMN (filed Oct. 2, 2003).

     Plaintiff Johnson filed a first Amended Complaint on August
27, 2004, adding the current named Plaintiff Robinson to this
suit, as well as, Defendant Assurance.  On January 27, 2005, a
Second Amended Complaint was filed which named Long & Foster and
Mid-States as Defendants.  Upon this Court's approval of two
separate settlement agreements, one on August 27, 2004, and the
other on January 18, 2006, most of the litigation related to the

---

[1] The other three defendants consisted of: the Knox
Financial Group, KF settlement Services LLC and Bridgestreet
Settlement Services LLC.

four above-referenced suits was resolved.

On January 18, 2006, Robinson filed a Third Amended Complaint in which she is the lone named Plaintiff and Assurance, Long & Foster, Mid-States, and Fountainhead are the Defendants. Robinson alleges that on May 22, 2003, she purchased a house through Long & Foster and, as part of that transaction, obtained a mortgage.  She paid a portion of the title charges to Assurance, which she alleges is a sham affiliated business entity jointly owned by Fountainhead, Long & Foster, and Mid-States.  On January 20, 2006, New Defendants were each served the Third Amended Complaint.  Prior to this date, none of these three Defendants were served with notice of any of the three prior Complaints.  On March 13, 2006, New Defendants filed a Motion to Dismiss and Fountainhead filed its own motion incorporating by reference the substantive arguments made by New Defendants.

## II.  LEGAL STANDARD

In deciding a motion to dismiss, a court will consider the facts stated in the complaint and the documents referred to in the complaint and relied upon by the plaintiff in bringing the action.  In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d 652, 656 (D. Md. 2000).  If matters outside the pleadings are presented and not excluded, the motion must be considered under the summary judgment standard of Rule 56 of the Federal Rules of Civil Procedure.  See Villeda v. Prince George's County, Md., 219 F. Supp. 2d 696, 698 (D. Md. 2002).  Resolution

3

of the motion did not require consideration of matters outside the pleadings and, therefore, the Court will treat Defendants' motions as motions to dismiss.

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure should not be granted unless "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Conley v. Gibson, 355 U.S. 41, 45-46 (1957).  In considering such a motion, the court is required to accept as true all well-pled allegations in the Complaint, and to construe the facts and reasonable inferences from those facts in the light most favorable to the plaintiff.  See Ibarra v. United States, 120 F.3d 472, 473 (4th Cir. 1997).  "To survive a motion to dismiss, Plaintiff[s] must have alleged facts that show that they are entitled to relief on their substantive causes of action." In re Criimi Mae, Inc. Securities Litigation, 94 F. Supp. 2d at 656.

When a defendant files a motion to dismiss pursuant to Rule 12(b)(1) and contends that the complaint completely fails to allege any factual basis for subject matter jurisdiction, "the facts alleged in the complaint are assumed to be true and the plaintiff, in effect, is afforded the same procedural protections as [s]he would receive under a Rule 12(b)6 consideration." Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982).

**III.  DISCUSSION**

4

A.  Statute of Limitations

RESPA claims brought under § 2607 must be brought within "1 year . . . from the date of the occurrence of the violation."  12 U.S.C. § 2614.  Defendants argue that the date of the occurrence of the alleged violation is the date on which Robinson closed on and purchased her home - May 22, 2003.  Robinson's action was filed against Assurance on August 27, 2004, and against Long & Foster and Mid-States on January 27, 2005.  Both filings were after the expiration of the one-year statute of limitations.

Plaintiff argues that the one-year statute of limitations was tolled as to New Defendants based on the fact that Johnson's original complaint was filed as both a plaintiff and defendant class action.  Plaintiff cites to American Pipe & Construction Co. v. Utah, 414 U.S. 538 (1974), and to 2 H. Newberg & A. Conte, Newberg on Class Actions, 4:54 (4th ed. 2005) to support this assertion.

In American Pipe, the lower court had determined that the suit could not continue as a class and the potential plaintiffs lost the opportunity to bring individual suits.  414 U.S. at 552.  The Supreme Court held that, "at least where class action status has been denied solely because of failure to demonstrate that the class is so numerous that joinder of all members is impracticable, the commencement of the original class suit tolls the running of the statute for all purported members of the class

who make timely motions to intervene after the court has found

the suit inappropriate for class action status." Id. at 552-53

(internal citations omitted).  The American Pipe Court recognized

that, [t]his rule is in no way inconsistent with the functional

operation of a statute of limitations. . . . [S]tatutory

limitation periods are 'designed to promote justice by preventing

surprises through the revival of claims that have been allowed to

slumber until evidence has been lost, memories have faded, and

witnesses have disappeared.'" Id. at 554 (quoting Order of

Railroad Telegraphers v. Railway Express Agency, 321 U.S. 342

(1944)).

In his treatise, Professor Newberg discusses the reasons for

and against tolling the statute of limitations with respect to

defendant classes in light of American Pipe.  He concludes that:

> American Pipe's tolling rule for plaintiff
> class actions works equally well in harmonizing
> the objective of Rule 23 and of statutes of
> limitations when applied to the filing of
> defendant class actions that are subsequently
> certified by the court for all issues.  In that
> instance, assuring that the defendant class is
> adequately represented should protect the
> interests of all class members.  When a
> defendant class is denied or decertified or is
> limited to selected common issues, the
> application of this tolling rule does not
> assure adequate representation and encounters
> the risk that unless the defendants have
> otherwise been given timely notice of the class
> action, then because of the inevitable lead
> time necessary for a court to reach a class
> ruling in any particular case, the defendants
> may be exposed without notice to individual
> claims after the expiration of the limitations

period.

Newberg § 4:54.

Contrary to Plaintiff's argument, American Pipe does not
stand for the proposition that, "[f]rom the moment that the
lawsuit was filed, limitations as to each of the class members –
both Plaintiff and Defendant class members – were tolled."  See
Opp'n 11.  American Pipe allowed for the tolling of the statute
of limitations in certain instances with respect to plaintiff
class actions.  Further, Plaintiff selectively quotes Newberg and
fails to recognize that Newberg concludes that, "[p]ending
clarification by the Supreme Court of the tolling rule as applied
to defendant class actions, courts confronted with questions of
tolling when a defendant class is denied or decertified must
fashion procedures and doctrines that recognize the potential
unfairness of the application of the American Pipe tolling rule
to defendant class members."

Two years after American Pipe was decided a Pennsylvania
District Court held that the "tolling doctrine can only be
applied to defendants as of the time they were added as party
defendants in one of the complaints filed by plaintiffs. . . .
Otherwise, defendants would be required to defend against actions
of which they had no knowledge whatsoever until after the statute
of limitations had run."  Chevalier v. Baird Sav. Asso., 72
F.R.D. 140, 155-56 (E.D. Pa. 1976).  Although not directly

addressing the tolling of statute of limitations against a
defendant class, the Fourth Circuit has applied the same
reasoning as the <u>Chevalier</u> court in two more recent opinions.  In
a 2006 opinion, the Fourth Circuit stated that the <u>American Pipe</u>
equitable tolling rule "is a limited exception to the universal
rule that statute of limitations are impervious to equitable
exceptions" and it further recognized the importance of notice in
determinations involving tolling.  <u>Bridges v. Dept. of Md. State
Police</u>, 441 F.3d 197, 211 (4th Cir. 2006).  Further, in
discussing crossjurisdictional equitable tolling, the Fourth
Circuit noted that because many of the defendants were not named
in the federal class action, defendants did not receive
sufficient notice within the limitations period to justify
equitable tolling.  <u>Wade v. Danek Medical, Inc.</u>, 182 F.3d 281,
288 n.9 (4th Cir. 1999).

The importance of notice resonates throughout the above
cited opinions and Professor Newberg's treatise.  The <u>American
Pipe</u> rule does not broadly toll the statute of limitations in
defendant class action suits.  In the present case, New
Defendants were not named defendants until more than a year after
the alleged RESPA violation occurred and did not receive any
notice of such action until they were served over three years
after the alleged violation date.  Therefore, this Court finds
that the one-year statute of limitations has run on the

Plaintiff's RESPA claims against New Defendants and these claims will be dismissed under Fed. R. Civ. Pro. 12(b)(1).[2]

B. Service of Process

New Defendants argue that Assurance was not served with the summons and complaint within the 120 day time period proscribed by Federal Rule of Civil Procedure 4(m).  That rule provides:

> If service of the summons and complaint is not made upon a defendant within 120 days after the filing of the complaint, the court, upon motion or on its own initiative after notice to the plaintiff, shall dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time; provided that if the plaintiff shows good cause for the failure, the court shall extend the time for service for an appropriate period.

Assurance was named a Defendant in the First Amended Complaint filed on August 27, 2004, and was not served at that time.  The existing defendants in the case consented to a Third Amended Complaint, which was filed on January 18, 2006.  Assurance was served two days later.

Plaintiff argues that Assurance was not served until January 20, 2006, because on December 30, 2003, the Court stayed this case and, although the stay was lifted temporarily on two occasions, the stay was not permanently lifted until January 18,

---

[2] Although the Court need not further address the Plaintiff's failure to file suit within the statute of limitations, the Court, nonetheless, notes the persuasiveness of New Defendants' argument that the named plaintiff, Johnson, had no standing to sue any of the New Defendants since she did not do business with any of them.  Mem. 13-16.

2006.  Plaintiff reasons that the summons and complaint could not
have been served upon Assurance until this time because no
summons had issued – the Court's January 18, 2006, Order extended
the time for effecting service and directed the court clerk to
issue the writ of summons to Assurance.  In addition, Plaintiff
argues that if the Court finds that the time for service was not
stayed, good cause exists for the Court to extend the time of
service.  According to Plaintiff, good cause exists because it
was "impossible" for the clerks office to issue the summons as a
result of the stay and Plaintiff could not serve Assurance with
the summons prior to its issuance.  Plaintiff also argues that
good cause exists because they were involved in settlement
discussions during the stay.  The Court agrees that good cause
exists for it to extend the time for service.

   C.  RESPA Claims

    Although the RESPA claims asserted against New Defendants
will be dismissed for violating the statute of limitations, the
RESPA claims as against Fountainhead remain and must be
addressed.  The facts supporting the claims are as follows:
Plaintiff alleges that Fountainhead, together with Long & Foster
and Mid-States, organized Assurance – a sham and phony limited
liability company.  Compl. ¶ 25.  Plaintiff claims that Assurance
was established to appear on closing documents even though the
work was actually done by Fountainhead.  Id. ¶ 26.  Borrowers

allegedly paid Assurance unearned fees for purported goods or
services in connection with their mortgage loan and Assurance
allegedly did virtually nothing with respect to the loan.  Id. ¶
38.  Assurance would then allegedly channel part of this
additional fee back to Long & Foster and Mid-States as a
kickback, referral, or split-fee.  Id. ¶ 42.  Plaintiff purports
that the money was paid to Long & Foster and Mid-States to reward
them for referring the closing and settlement work to
Fountainhead.  Id. ¶ 45.

> 1.   Section 8(b)- RESPA, 12 U.S.C. § 2607(b)
>      - Splitting Charges

Plaintiff claims that Defendants violated § 8(b) of RESPA by
making payments to Assurance - $50.00 for Title Insurance Binder
Preparation and $669.20 for Title Insurance - and alleges that
"these fees were in addition to the customary and usual fees that
Fountainhead Title charges, or was permitted to charge for the
title, insurance and closing work [and] were channeled back to
Long & Foster and Mid-States."  Id. ¶¶ 51-52, 74.  Section 8(b)
states:

> no person shall give and no person shall
> accept any portion, split or percentage of any
> charge made or received for the rendering of a
> real estate settlement service in connection w/
> a transaction involving a federally related
> mortgage loan other than for services actually
> performed.

New Defendants main argument with respect to Plaintiff's § 8(b)
claim is that payments from consumers to title agents are not

actionable under § 8(b) unless a portion, split or percentage of that charge is given to a third party and here plaintiff has not alleged that any split has occurred.  Mem. 19.  The Fourth Circuit has held that § 8(b) does not apply to every overcharge but "only prohibits overcharges when a portion or percentage of the overcharge is kicked back to or split with a third party." Boulware v. Crossland Mortgage Corp., 291 F.3d 261, 265 (4th Cir. 2002).  "Under RESPA's express terms, the broad protection of the statute extends only over transactions where the defendant gave or received any portion, split, or percentage of any charge to a third party."  Weizeorick v. Abnamro Mortgage Group, Inc., 337 F.3d 827, 830 (7th Cir. 2003) (internal quotations and citations omitted) (emphasis added).  Plaintiff does not allege that Fountainhead gave or received any portion of the fees to or from Assurance only that Assurance received the unearned fee from Robinson and then 'channeled' it to Long & Foster and Mid-States. See Compl. ¶ 45.  As such, the § 8(b) claim against Fountainhead will be dismissed.

    2.   Section 8(a)- RESPA, 12 U.S.C. § 2607(a)
         - Business Referrals

In her Complaint, Plaintiff alleges that her payments to Assurance - $50.00 for Title Insurance Binder Preparation and $669.20 for Title Insurance - were also in violation of § 8(a) of RESPA.  Compl. ¶¶ 51-52, 73.  Section 8(a) states:

        no person shall give and no person shall

12

> accept any fee, kickback, or thing of value
> pursuant to any agreement or understanding,
> oral or otherwise, that business incident to or
> a part of a real estate settlement service
> involving a federally related mortgage loan
> shall be referred to any person.

With respect to § 8(a), Plaintiff asserts that "Defendants each violated RESPA . . . by giving paying or receiving fees, kickbacks or other things of value to or from the sham and bogus entity, Assurance, pursuant to agreements or understandings that business incident to or a part of a real estate settlement or closing services involving 'federally related mortgage loans' would be referred to Fountainhead Title." Id. ¶ 72.

New Defendants maintain that Plaintiff fails to state a § 8(a) claim because the fees paid by Robinson to Assurance were not alleged to have been paid pursuant to an agreement that some person or Assurance would refer settlement service.  Plaintiff, however, alleges that the § 8(a) violation results from the alleged channeling of a portion of Plaintiff's payments by Assurance to Long & Foster and Mid-States pursuant to an agreement to refer business to Fountainhead.  New Defendants acknowledge this argument but assert that the allegations fail to set forth a § 8(a) claim for the reasons discussed below.

New Defendants argue that in order to have standing to properly bring a § 8(a) violation a plaintiff must allege an "overcharge."  New Defendants reason that the filed rate doctrine bars challenges to filed rates, insurance premiums are filed

rates, and thus, in order to allege an injury in a RESPA claim, a plaintiff must allege that she paid more than the filed rate. "[F]ederal Courts have applied the filed rate doctrine in a variety of contexts to bar recovery by those who claim injury by virtue of having paid a filed rate." <u>Taffet v. S. Co.</u>, 967 F.2d 1483, 1488 (11th Cir. 1992) (citing <u>Keogh v. Chicago & N.W. Ry.</u>, 260 U.S. 156 (1922)).  With respect to a RESPA claim, one of our sister courts in this appeals circuit has stated that, "to the extent that [the defendant] was required to file its insurance rates with the North Carolina Department of Insurance, based upon the filed rate doctrine, the filing of a rate by [the defendant] would bar [the p]laintiffs from challenging the reasonableness of those rates." <u>Mullinex v. Radian Guaranty Inc.</u>, 311 F. Supp. 2d 474, 484 n.6 (M.D. N.C. 2004).

<u>Mullinex</u> is one of the latest decisions in a line of cases that has led New Defendants to the conclusion that, in order to fulfill the injury prong of the standing test,[3] a § 8(a) plaintiff must have paid a fee in addition to a filed rate. Opp'n 27-28.  This line of cases begins with a 1993 case in the Northern District of Illinois.  In that case the plaintiff

_____

[3] "To invoke the judicial power conferred by Article III of the United Sates Constitution, a plaintiff must assert an 'injury in fact' and, absent such assertion, a federal court lacks jurisdiction." <u>Morales v. Attorneys' Title Insurance Fund, Inc.</u>, 983 F. Supp. 1418, 1429 (S.D. Fl. 1987) (citing <u>Sierra Club v. Morton</u>, 405 U.S. 727 (1972)).

contended that he had been overcharged by the defendant title company by $8, but sued for all of defendant's charges.  <u>Durr v. Intercounty Title Co. of Ill.</u>, 826 F. Supp. 259 (N.D. Ill. 1993). Section 8(d)(2) of RESPA provides that to remedy a RESPA violation an amount of damages may be awarded "equal to three times the amount of any charge paid."  In <u>Durr</u>, the plaintiff sued for all of defendant's charges and requested damages under § 8(d)(2) of RESPA.  The <u>Durr</u> Court criticized the plaintiff's complaint for alleging excessive damages and held that the plaintiff's damages for the violation were three times the $8.00 overcharge and not three times what the title company charged for all of its settlement services.  826 F. Supp. at 260-61.  The Seventh Circuit affirmed this decision.  14 F.3d 1183 (7th Cir. 1994).

In 1997, a district court in Florida cited <u>Durr</u> in finding that the plaintiffs had no standing under RESPA to pursue their § 8(a) claims.  <u>Morales v. Attorneys' Title Insurance Fund, Inc.</u>, 983 F. Supp. 1418 (S.D. Fl. 1997).  In that case, the plaintiffs alleged that the defendant title insurance companies gave illegal kickbacks to the title agents who had referred the plaintiffs to the defendants.  Plaintiffs argued that they were overcharged for the title insurance even though their premiums were consistent with defendant's filed rates.  The court found that under the filed rate doctrine the plaintiff could not challenge the

reasonableness of the title insurance rates that had been filed
with the Florida Department of Insurance.  <u>Id.</u> at 1429.  Thus,
because plaintiffs had no legal right to pay anything other than
the promulgated rates, they suffered no cognizable injury, and
lacked the necessary standing to pursue their claims.  <u>Id.</u>

A Texas district court followed <u>Durr</u> and <u>Morales</u> and found
that RESPA plaintiffs did not have standing where they did not
allege that the defendant insurers overcharged them.  <u>Moore v.
Radian Group, Inc.</u>, 233 F. Supp. 2d 819 (E.D. Tex. 2002).  Based
on the above line of cases, various courts have come to the
conclusion that "absent an overcharge that is contestable by the
plaintiff, a plaintiff does not have standing to sue under
RESPA."  <u>Mullinax</u>, 311 F. Supp. 2d at 483.

Based on the above case law, New Defendants maintain that
Plaintiff does not have standing to pursue her claim because she
has not alleged an overcharge and is merely challenging the
reasonableness of a filed rate.  Plaintiff asserts that she has
alleged an overcharge.  Plaintiff reasons that her title
insurance premium payment of $669.00 to Assurance, although
consistent with the rate Assurance filed with the Maryland
Insurance Administration, was nonetheless greater than the title
insurance premium Fountainhead could have charged under its filed
rates.  Compl. ¶ 4 (stating that the settlement fees paid to
Assurance "were in addition to the customary and usual fee that

16

Fountainhead was permitted to charge for title, insurance and closing work"). Plaintiff also argues that the $50.00 fee she paid for Title Insurance Binder Preparation is not part of a filed rate.

The Court finds that Plaintiff has alleged an overcharge. Unlike <u>Morales</u>, where the plaintiffs alleged that as a result of illegal kickbacks they were overcharged for title insurance, in the present case, Plaintiff is not challenging Assurance's fee in and of itself, but in comparison to Fountainhead's fee. The question is not whether Assurance's fee is reasonable, but whether Plaintiff should have instead paid the filed rate of Fountainhead.[4] In addition, Plaintiff's allegations concerning the binder fee are undoubtedly not covered by the filed rate doctrine and constitute an overcharge claim.

In any event, this Court does not agree with New Defendants' assertion that absent a contestable overcharge, a plaintiff lacks standing to pursue an § 8(a) claim. In differentiating § 8(a) from 8(b) the Fourth Circuit has stated, "[§] 8(a) prohibits the payment of formal kickbacks or fees for the referral of business and <u>does not require an overcharge to a consumer</u>." <u>Boulware</u>, 291 F.3d at 266 (emphasis added). In February 2006, a Pennsylvania

---

[4] The Court notes that to the extent Plaintiff attempts to challenge the reasonableness of Assurance's filed rate her claim fails, but she can, nonetheless, maintain a claim based upon the amount charged by Assurance in comparison to that charged by Fountainhead.

district court found that the reasoning of the <u>Durr</u>, <u>Morales</u> line
of cases with respect to overcharges and standing was flawed.
<u>Kahrer v. Ameriquest Mortgage Co.</u>, 418 F. Supp. 2d 748 (W.D. Pa.
2006).  The district court found that <u>Morales</u> and its progeny
misinterpreted the damages provision of § 8(d)(2) which provides
for "three times the amount of <u>any charge</u> paid for the settlement
service."  The <u>Kahrer</u> court reasoned that these damages "appear
to encompass all of the charges associated with the services
provided rather than only treble the amount of any overpayment."
<u>Id.</u> at 753.  In addition to finding various other
misinterpretations of the statute, the court in <u>Kahrer</u> found that
the <u>Morales</u> lines of cases also misconstrued RESPA's legislative
history.  The <u>Kahrer</u> court criticized <u>Morales</u> and its progeny for
ignoring the 1983 Amendment to § 8.  In discussing the purpose of
this amendment, the district court stated:

> the purpose of the [Amendment] was to address
> Congress' concerns over 'controlled business
> arrangements,' whereby real estate settlement
> business is referred between two affiliated
> entities, which RESPA had not previously
> addressed.  Under such circumstances, one
> entity is able to provide a benefit to its
> affiliate without the direct payment of a
> referral fee which, as stated in the 1982 House
> Committee Report, could result in harm to
> consumers beyond an increase in settlement
> charges as had been the concern when RESPA was
> first enacted.  <u>See</u> H.R.Rep. No. 97-532, 97th
> Cong., 2nd Sess. At pp. 51-52 (1982).
> Specifically, the report contemplates, amongst
> other things, that in controlled business
> relationships, the advice of the person making
> the referral may lose its impartiality and may

> not be based on his professional evaluation of
> the quality of service provided if the referror
> or his associates have a financial interest in
> the company being recommended.  In addition,
> since the real estate industry is structured so
> that settlement service providers do not
> compete for a consumer's business directly, but
> almost exclusively rely on referrals from real
> estate brokers, lenders or their associates for
> their business, the growth of controlled
> business arrangements effectively reduce the
> kind of healthy competition generated by
> independent settlement service providers.

Id. at 754.  The Kahrer court held that the plaintiff's failure

to allege that she was overcharged for settlement services did

not preclude a finding that she suffered an injury in fact or

that she had standing to bring an § 8(a) claim.  Id. at 756.

This Court agrees with the detailed reasoning set forth in

Kahrer, which is further supported by the Fourth Circuit's

finding in Boulware, that injury in a RESPA case can be shown by

harm other than allegations of overcharges.  In the present case,

in addition to the overcharges alleged, the alleged § 8(a)

violation presents the possibility for other harm, including a

lack of impartiality in the referral and a reduction of

competition between settlement service provides.  As such, the

Court finds that Plaintiff has properly alleged an § 8(a) claim

against Fountainhead and she has the requisite standing to pursue

such claim.[5]

---

[5] In its Reply, New Defendants state for the first time that
"Assurance was a bona-fide settlement service provider and that
the distributions paid, in fact qualify for the affiliated

D.  State Law Claims

Plaintiff sets forth five state law claims: violation of the Maryland Consumer Protection Act, negligent misrepresentation, fraud, civil conspiracy, and restitution/unjust enrichment.  New Defendants first argue that these claims fail because Plaintiff has failed to allege a cognizable injury.  As previously discussed, this argument fails.  New Defendants next address the claims individually.

1. Consumer Protection Act

Plaintiff alleges that Defendants violated the Consumer Protection Act (CPA), MD. CODE ANN., COM. LAW II §§ 13-101 et seq., specifically, § 13-303 which prohibits unfair or deceptive trade practices.  Plaintiff asserts that Defendants violated the act by:  1) "concealing the arrangement between them and extracting additional and illegal fees from the real estate broker;" 2) "issuing title insurance and/or providing title services through an entity that is not licensed or otherwise duly authorized to do either;" and 3) "inciting, encouraging and aiding an abetting [Assurance's] receipt of funds in connection with mortgage loan transactions when such funds were, in reality, a referral fee or kick-back."  Compl. ¶¶ 79-81.

New Defendants argue that the CPA does not apply to them.

―――――――――――――――

business or controlled business exception."  Reply 16.  The Court will refrain from addressing this issue until properly briefed by Fountainhead and Plaintiff.

Section 13-104 exempts various professional services from the CPA, including insurance producers licensed by the state and real estate brokers.  New Defendants assert that as a real estate agent Long & Foster is exempt from the CPA and Assurance and Mid-States are exempt as providers of insurance services in Maryland. Sections 10-101(i)(1) and (2) of the Insurance Article of the Maryland Code defines "Title insurance producer" as a person who "for compensation, solicits, procures, or negotiates title insurance contracts" or a person who "provides escrow, closing, or settlement services that may result in the issuance of a title insurance contract."  Although not specifically alleged, the Court must assume that Fountainhead is a title insurance producer and for the reasons asserted by New Defendants would also be exempt from the CPA.

Without disputing that Defendants meet the definitions of the above professionals, Plaintiff argues that the § 13-104 exemption does not apply when the listed professionals are acting outside the scope of their professional capacity.  Opp'n 35 n.15. Plaintiff contends that she did not sue Long & Foster because of its activities as a realtor, but because it worked in conjunction with the other defendants to establish the sham company - Assurance Title.  Id.  Plaintiff's allegations, nonetheless, concern the "professional services" of Defendants and this claim will be dismissed.

2. Negligent Misrepresentation / Fraud

Plaintiff sets forth additional state law claims for negligent misrepresentation and fraud.  New Defendants argue that Plaintiff has failed to identify any affirmative misrepresentation made by New Defendants and that the claims fail to meet the requisite heightened pleading requirement.  <u>See</u> Fed. R. Civ. P. 9(b).  Rule 9(b) requires that "[i]n all averments of fraud . . . , the circumstances constituting fraud . . . shall be stated with particularity."  "In interpreting this Rule, this Court and other courts have held that a plaintiff alleging fraud must make particular allegations of the time, place, speaker, and contents of the allegedly false acts or statements."  <u>Adams v. NVR Homes, Inc.</u>, 193 F.R.D. 243, 249-50 (D. Md. 2000).  New Defendants argue that Plaintiff's claims of negligent misrepresentation, fraud, and conspiracy are all grounded in fraud and, therefore, are subject to the heightened pleading requirement of Rule 9(b).  <u>See</u> <u>id.</u> at 250 ("The requirements of Rule 9(b) apply to all cases where the gravamen of the claim is fraud even though the theory supporting the claim is not technically termed fraud.  The requirements of the Rule also apply to the manner in which the statements are false and the specific facts raising an inference of fraud.").  New Defendants assert that Plaintiff has failed to plead the time, place and content of the allegedly fraudulent representation or omissions,

or the identity of the person alleging the fraud.   Therefore, her
state law claims should be dismissed.

Plaintiff responds that the heightened pleading standard
does not apply because the case involves Defendants' fraudulent
concealment in the nature of an omission.   Specifically,
Plaintiff argues that Defendants concealed the nature of the sham
company from the Plaintiff.   "Despite the general rule regarding
specificity such particularity cannot be met in a concealment
case . . . because an omission cannot be described in terms of
the time, place and contents of the misrepresentation of the
identity of the person making [it]." Swedish Civil Aviation
Admin. v. Project Mgmt. Enters., Inc., 190 F. Supp. 2d 785, 799
(D. Md. 2002) (internal quotations and citations omitted).

In their reply, New Defendants assert that the heightened
pleading requirement should not be relaxed because this is not a
concealment case - Plaintiff alleges that defendants made "false
and misleading representations and omissions," as well as
"fraudulent statements, representations and omissions." See
Compl. ¶¶ 86, 87.   The Court agrees that the relaxed Rule 9(b)
analysis only applies to a Plaintiff's claim of omission and not
the remaining claims. See Hill v. Brush Engineered Materials,
Inc., 383 F. Supp. 2d 814, 823 (D. Md. 2005).   Therefore, the
Court finds that the heightened pleading standard applies to
Plaintiff's claims that are grounded in fraud and not based on

23

allegations of omissions.

Plaintiff supports its misrepresentation and fraud claims by alleging that an affiliated business disclosure form given to Plaintiff by an unidentified party was misleading.  New Defendants counter that the affiliated business disclosure form contained no misleading information.  Plaintiff alleges that the form "contained false and deceptive information concerning: (a) the nature of the relationship between [the four defendants]; (b) the nature of the services (and related charges) alleged to be performed by the sham entity Assurance Title; (c) the fact that [Plaintiff] was required to use the services of Assurance Title; and (d) the fact that Plaintiff would be overcharged for the services allegedly performed by Assurance Title, including but not limited to the title insurance preparation."  Compl. ¶ 49.

Plaintiff did not attach a copy of the affiliated business disclosure form to her Complaint.  In its Motion, New Defendants based their arguments in response to Plaintiff's allegations concerning the disclosure form on a generic disclosure form allegedly used by Long & Foster during the time that Plaintiff purchased her home.  After the present motion was ripe, in response to a Court order, Plaintiff provided the Court with a copy of the "actual" affiliated business disclosure form signed by Plaintiff (Disclosure Form).  The two forms are not identical. On August 4, 2006, New Defendants responded to Plaintiff's brief

24

filed in conjunction with the Disclosure Form.

The Disclosure Form presented by Plaintiff supports her claim that the form contained deceptive information concerning the relationship of the four defendants.  RESPA requires that a party making a referral disclose, in the format of the Affiliated Business Disclosure form, the nature of the relationship, explaining the ownership and financial interest of the parties to the arrangement.  <u>See</u> 29 C.F.R. § 3500.15(a)(1).  Plaintiff's Disclosure Form curiously is from "Prosperity Mortgage Company" (Prosperity) and discusses the ownership interests of Prosperity.[6]  The Disclosure Form does not mention Fountainhead or Assurance, let alone the nature of their relationship and, as such, Plaintiff has sufficiently supported her negligent misrepresentation and fraud claims to withstand the present motion to dismiss.

The Court notes that the form presented by Plaintiff does not support her allegation that the form erroneously misrepresented the nature of services alleged to be performed by Assurance or the fact that Plaintiff was required to use the services of Assurance.  The form does not mention Assurance, nor its services, and the form states, "THERE ARE FREQUENTLY OTHER

---

[6] It is clear to the Court that there is more going on in this case than that which has been explained in the pleadings. These issues should be made clear to the Court in future pleadings.

SETTLEMENT SERVICE PROVIDERS AVAILABLE WITH SIMILAR SERVICES. YOU ARE FREE TO SHOP AROUND TO DETERMINE THAT YOU ARE RECEIVING THE BEST SERVICES AND THE BEST RATE FOR THOSE SERVICES." The Court has concerns about Plaintiff's claim that the Disclosure Form misrepresented the fact that she would be overcharged for services performed by Assurance, as Plaintiff notes that the Form "correctly states that the rate charged to consumers in Maryland is $3.50 per thousand dollars for standard title insurance." Plaintiff argues that she was charged $4.20 per thousand dollars for title insurance, rather than $3.50, but the Disclosure Form, nonetheless, does not seem to misrepresent any of the fees portrayed.

Plaintiff also supports its misrepresentation and fraud claims by alleging that the HUD-1 Settlement Statement, allegedly prepared by Fountainhead, is false and misleading. New Defendants argue that the HUD-1 Statement is not actionable for two reasons. First, New Defendants argue that there is no private right of action to enforce or complain about disclosures in HUD-1 Settlement Statements. Section 4 of RESPA sets forth the requirements for how charges are listed on the HUD-1 form and there is no private right of action to enforce § 4. See, e.g., Reese v. 1st Metro Mortgage Co., No. 03-2185-KHV, 2003 U.S. Dist. LEXIS 19256 (D. Kan. Oct. 28, 2003) (holding that there is no private right of action to enforce § 4 of RESPA). Second, New

Defendants assert that RESPA requires title companies to "clearly itemize all charges imposed upon the borrower and all charges imposed upon the seller in connection with the settlement" (12 U.S.C. § 2603(a)), but does not obligate the preparer to comment on whether the payments made were reasonable or on the amount of work the entity being paid performed.  New Defendants conclude that even if Plaintiff's assertions are correct and she made payments to Assurance for work done by Fountainhead, the HUD-1 form, nonetheless, properly represented the payments from Plaintiff to Assurance and Fountainhead was not obligated to convey any other information in the form.  In her Opposition, Plaintiff does not specifically address New Defendants arguments concerning the HUD-1 form and its requirements.  The Court finds that Plaintiff fails to allege that there was a misrepresentation in the HUD-1 form or that there was a duty to disclose the nature of the relationship of the parties on that form.

    3.  Conspiracy

    Plaintiff's claim for conspiracy is also grounded on fraud and subject to the heightened pleading requirement.  Claims of conspiracy to commit fraud must abide by Rule 9(b)'s particularity requirements.  Adams, 193 F.R.D. at 250 (citation omitted).  "The more specific requirements for an allegation of conspiracy are that the pleader provide, whenever possible, some details of the time, place and alleged effect of the conspiracy." Nat'l Constructors Ass'n v. Nat'l Elec. Contractors Ass'n, Inc.,

498 F. Supp. 510, 528 (D. Md. 1980) (internal citations and quotations omitted); see also Odyssey Re (London) Ltd. v. Stirling Cooke Brown Holdings Ltd., 85 F. Supp. 2d 282, 297 (S.D.N.Y. 2000) ("A proper allegation of a conspiracy to commit fraud in a civil complaint must set forth with certainty facts showing particularly: (1) what a defendant or defendants did to carry the conspiracy into effect; (2) whether such acts fit within the framework of the conspiracy alleged; and (3) whether such acts, in the ordinary course of events, would proximately cause injury to the plaintiff.") (citations omitted); Waller v. Butkovich, 584 F. Supp. 909, 931 (M.D.N.C. 1984) ("[P]laintiffs must expressly allege an agreement or make averments of 'communication, consultation, cooperation, or command' from which such an agreement can be inferred.") (citing Weathers v. Ebert, 505 F.2d 514, 517 (4th Cir. 1974)).

Plaintiff alleges that Defendants conspired with each other by common agreement or understanding in forming the sham affiliated business company and using it to deprive Plaintiff of money and property.  Compl. ¶¶ 3-4, 96-99.  The alleged actions of Defendants in relation to the asserted conspiracy claim are adequately set forth in the Complaint and, as such, the claim withstands the present motion.[7]

---

[7] The Court notes that under Maryland law conspiracy is not a tort on its own, but is dependent on some underlying tort that caused injury to the plaintiff.  See Estate of White v. R.J. Reynolds Tobacco Co., 109 F. Supp. 2d 424, 428 (D. Md. 2000)).  Should Plaintiff's remaining state law claims fail in the future, the conspiracy claim must also fail.

    4.  Restitution/Unjust Enrichment

Additionally, Plaintiff brings a claim for restitution/unjust enrichment.  The following elements must be established to sustain a claim for unjust enrichment:  "[a] benefit conferred upon the defendant by the plaintiff; [a]n appreciation or knowledge by the defendant of the benefit; and [t]he acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."  <u>County Comm'rs of Caroline County v. J. Roland Dashiell & Sons, Inc.</u>, 358 Md. 83, 95 n.7 (2000).  Plaintiff has alleged facts in support of each of the elements of unjust enrichment. Compl. ¶¶ 101-03.

New Defendants argue that Plaintiff's claim fails, because it is covered by an express contract and, thus, is barred.  "It is well settled law in Maryland, and elsewhere, that a claim for unjust enrichment may not be brought where the subject matter of the claim is covered by an express contract between the parties." See <u>FLF, Inc. v. World Publ'ns, Inc.</u>, 999 F. Supp. 640, 642 (D. Md. 1998).  "Generally, courts are hesitant to deviate from the principle of the rule and allow unjust enrichment claims only when there is evidence of fraud or bad faith, there has been a breach of contract or a mutual recission of the contract, when recission is warranted, or when the express contract does not

fully address a subject matter." <u>County Comm'rs of Caroline
County</u>, 358 Md. at 101.  "Any fraud or bad faith that negates the
operation of [the] rule must occur in the formation of the
contract." <u>R.J. Wildner Contracting Co. v. Ohio Turnpike Comm'n</u>,
913 F. Supp. 1031, 1043 (D. Ohio 1996).  In the present case,
Plaintiff's claims are based upon the contract she entered with
Defendants under which she paid the allegedly excessive fees to
Assurance.  Because, as discussed above, Plaintiff has alleged
fraud in the formation of the contract her restitution/unjust
enrichment claims will not be dismissed.

     5.  Voluntary Payment Doctrine

New Defendants also argue that Plaintiff's state law claims
are barred by the voluntary payment doctrine.  Under the
voluntary payment doctrine, "when one voluntarily pays money
under a mistake of law, the payor may not ordinarily bring a
common law action for the recovery of the money.  He may sue for
a return of the money only if the right to recover it is provided
for by statute." <u>Dua v. Comcaset Cable of Md., Inc.</u>, 370 Md.
604, 646 (2002).  The voluntary payment doctrine, however, is
inapplicable to cases akin to the present case where an action at
common law exists to recover an overpayment.  <u>See</u> <u>id.</u>

Additionally, the voluntary payment doctrine bars claims
based solely on a mistake of law.  <u>See</u> <u>Halle Development v. Anne
Arundel County, Md.</u>, 371 Md. 312, 322 (2002).  According to New

Defendants, Plaintiff's claim involved a mistake of law –
Plaintiff claims that she did not know that the affiliated
business relationship was improper under RESPA, when in fact such
a relationship is permitted under RESPA.  Mem. 45.  Plaintiff's
claims of overcharges, however, are based on her mistake of fact
concerning the relationship of New Defendants.  As such, the
voluntary payment doctrine does not bar Plaintiff's claims.

## IV.  CONCLUSION

For these reasons, New Defendants' and Fountainhead's
motions to dismiss will be granted in part and denied in part.  A
separate order consistent with this Memorandum will follow.


                                       /s/
                              _____
                              William M. Nickerson
                              Senior United States District Judge

Dated: August 9, 2006